## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## PADUCAH DIVISION

**CIVIL ACTION NO: 5:04CV-138-M**

**ART K. EDWARDS et al.**                                                                                    **PLAINTIFFS**

**V.**

**UNITED STATES OF AMERICA,**                                                                         **DEFENDANTS**
**DEPARTMENT OF ENERGY, LOCKHEED**
**MARTIN ENERGY SYSTEMS, INC., and**
**UNITED STATES ENRICHMENT**
**CORPORATION**

## AMENDED MEMORANDUM OPINION AND ORDER

This matter is before the Court on motions by Defendants, Lockheed Martin Energy Systems, Inc. [DN 14], the United States Department of Energy [DN 15], and the United States Enrichment Corporation [DN 36]. Both the United States Department of Energy and Lockheed Martin Energy Systems move the Court to either dismiss the Complaint of Plaintiffs, Art K. Edwards, et. al, or, in the alternative, to grant summary judgment. The United States Enrichment Corporation moves the Court to grant a judgment on the pleadings, or, in the alternative, to grant summary judgment. Fully briefed, these matters stand ripe for decision. For the following reasons, Defendants' motions are all **GRANTED.**

### I. STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff undoubtedly can

prove no set of facts in support of its claim that would entitle it to relief. Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir.1996), cert. denied, 520 U.S. 1251 (1997). A judge may not grant a Fed. R. Civ. P. 12(b)(6) motion based on a disbelief of a complaint's factual allegations. Wright v. MetroHealth Medical Center, 58 F.3d 1130, 1138 (6th Cir. 1995), cert. denied, 516 U.S. 1158 (1996). A Fed. R. Civ. P. 12(b)(6) motion tests whether the plaintiff has stated a claim for which the law provides relief. Gazette v. City of Pontiac, 41 F.3d 1061, 1064 (6th Cir.1994).

The standard of review requires that a plaintiff plead more than bare legal conclusions. Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 726 (6th Cir.1996). The complaint must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Gazette, 41 F.3d at 1064. "In practice, a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Lillard, 76 F.3d at 726 (citation omitted). In deciding a motion to dismiss, the Court may consider all papers and exhibits appended to the complaint, as well as any matters of which judicial notice may be taken. Hirsch v. Arthur Anderson & Co., 72 F.3d 1085, 1092 (2d Cir.1995).

The Court reviews a motion for judgment on the pleadings pursuant to Rule 12(c) under "the same de novo standard applicable to a motion to dismiss under Rule 12(b)(6)." Ziegler v. IBP HogMarket, Inc., 249 F.3d 509, 511-12 (6th Cir. 2001). "In reviewing the motion, the Court must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff

undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." Id. at 512.  However, the Court "need not accept as true legal conclusions or unwarranted factual inferences." Mixon v. Ohio, 193 F.3d 389, 400 (6th Cir. 1999).  Judgment in the defendant's favor is warranted if plaintiffs cannot prove any set of facts in support of their claims that would entitle them to relief.  Id.

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories, and affidavits, establish that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986).  The Rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the

[non-moving party]." Anderson, 477 U.S. at 252. It is against these standards that the Court reviews the following facts.

## II. BACKGROUND

The Plaintiffs, a class of retirees from the Paducah Gas Diffusion Plant (PGDP), were "participants" in the Pension Plans for employees who worked at PGDP. In this action, Plaintiffs argue that they are not receiving the full retirement due to them under the Pension Plans and bring claims against Lockheed Martin Energy Systems (LMES), the United States Department of Energy (DOE), and the United States Enrichment Corporation (USEC) pursuant to the USEC Privatization Act, 42 U.S.C. § 2297h et seq., the Employee Retirement Income Security Act (ERISA), as amended, 29 U.S.C. § 1001 et seq., the Equal Protection Clause of the U.S. Constitution, and 42 U.S.C. § 1983.

Before 1993, the PGDP was operated by various contractors acting on behalf of the DOE. In 1992, Congress determined that due to a shrinking market share, the domestic uranium enrichment program needed to have "the flexibility of a private sector operation to adequately respond to an intensely competitive international market." Accordingly, Congress created the United States Enrichment Corporation (Enrichment Corporation), a government-owned corporation, to carry out that privatization mission.

On July 1, 1993, all DOE contracts "relate[d] to uranium enrichment and related services" were transferred as a matter of law to the Enrichment Corporation. Private contractors continued to operate the PGDP on behalf of the Enrichment Corporation until it developed its own plan for privatization. On June 30, 1995, the Enrichment Corporation

presented President Clinton and Congress with its plan for privatization. On April 2, 1996, the "USEC Privatization Act," 42 U.S.C. § 2297h, was signed into law. Prior to the implementation of the USEC Privatization Act (Privatization Act), the employees of the various contractors who operated the PGDP were all "plan participants" in a pension plan which was sponsored by the various contractors as well as the DOE. The Privatization Act created a new scheme that is the subject of this litigation.

Pursuant to the Privatization Act, the Government-owned Enrichment Corporation transferred its assets to the publicly traded United States Enrichment Corporation, Inc. (USEC) and became a wholly-owned subsidiary of the USEC. On July 28, 1998 the privatization of the USEC took effect after an initial public offering of 100 percent of the corporation's stock to private investors. Since that date, the USEC has operated the PGDP.

As previously noted, the PGDP has been operated by various contractors over the last 54 years. Despite changes in the operating contractors at the PGDP, the labor and management force of employees remained constant. In other words, any change in the operating contractor preserved the labor and management force of the previous operating contractor and that labor and management force became employees of the new operating contractor. Thus, when Martin Marietta Utility Systems (later becoming Lockheed Martin Utility Systems (LMUS) following a merger of Martin Marietta Corporation and Lockheed Corporation in 1995) became the new operating contractor in 1993, the employees at PGDP continued to be participants in what was then the "Retirement Program Plan for Employees of Lockheed Martin Energy Systems, Inc."

Once USEC completed privatization, it terminated LMUS as the operating contractor of the Paducah plant. That decision triggered one of the "employee protections" provisions in the Privatization Act, 42 U.S.C. § 2297h-8(a)(2), which states as follows:

> In the event the private corporation terminates or changes the contract at either or both of the gaseous diffusion plants, the plan sponsor or other appropriate fiduciary of the pension plan covering employees of the prior operating contractor shall arrange for the transfer of all plan assets and liabilities relating to accrued pension benefits of such plan's participants and beneficiaries from such plant to a pension plan sponsored by the new contractor or the private corporation or a joint labor-management plan, as the case may be.

At the time USEC terminated LMUS' contract on May 18, 1999, USEC informed all retirees in the class that Plaintiffs purport to represent that they were going to be transferred from LMES' pension plan (the "original plan") to a pension plan established by USEC (the "new plan").[1] The notice, however, did not state that any surplus assets would be transferred from the original plan to the new plan. On December 21, 1999, the original plan was amended to clearly state that the original plan would transfer assets to the new plan in an amount equal to the accrued benefit of each transferred participant. Then, on May 24, 2000, USEC and LMES entered into a Pension Plan Asset Transfer Agreement, thus formalizing an arrangement that began with an initial asset transfer of approximately $400 million on or about July 1, 1999. This Agreement provided that the asset transfer would comply with section 414(I) of the Internal Revenue Code, and the Agreement made no provision whatsoever for the transfer of any surplus. Furthermore, the Agreement designated July 1,

---

[1] The term "original plan" refers to the plan that was formerly maintained by LMES and that is now maintained by BWXT Y-12 L.L.C., an operating contractor subsequent to LMES that took over the original plan. The term "new plan" refers to the plan covering current USEC employees and retirees.

1999 as the "initial transfer date," and June 30, 2000 as the "final transfer date." On June 15, 2000, LMES transferred the remaining balance from the original plan to the new plan.

Dissatisfied with both their transfer into the new plan and LMES' failure to transfer the surplus into the new plan, the Plaintiffs brought this action on June 29, 2004 naming as Defendants, USEC, LMES, and the DOE. Specifically, the Plaintiffs assert four counts against each of the Defendants. First, they aver that Defendants have deprived them of equal protection of the laws under the 14th Amendment in that they have been arbitrarily burdened by the award of an increase in benefits only to participants in the predecessor plan. Second, they contend that the Defendants have violated the express terms of the Privatization Act. Third, Plaintiffs aver that the Defendants have breached their fiduciary duties under ERISA. Fourth, Plaintiffs allege that the Defendants are liable to them under 42 U.S.C. § 1983 as a result of each of the first three purported violations enumerated in the Complaint.

### III. DISCUSSION

Defendants LMES, DOE, and USEC argue that all of these claims as set forth by the Plaintiffs cannot survive their respective motions. The DOE, in addition to arguing the merits of the Plaintiffs' claims, assert the defense of sovereign immunity. The Court will first address the DOE's sovereign immunity argument.[2] Thereafter, the Court will address the Plaintiffs' claims in the following order: (1) the Constitutional claim, (2) the Privatization Act claim, (3) the ERISA claim.

---

[2] Whether there has been an adequate waiver of sovereign immunity is a threshold issue. See e.g., Britell v. United States, 372 F.3d 1370, 1376 (Fed. Cir. 2004).

**A. Plaintiffs' Claims against the DOE**

Although the Plaintiffs raise several legal issues in their claims against the DOE, the Court need not address them all. Resolution of the sovereign immunity question will decide the matter. The DOE contends that, in enacting the Privatization Act, the United States expressly retained its sovereign immunity from any suit seeking to hold it liable for any of its actions in connection with the privatization of USEC, or for any of the operations of USEC after its privatization. The Plaintiffs argue that the Privatization Act contained a waiver of sovereign immunity.

The sovereign immunity doctrine essentially holds that a sovereign cannot be sued without its consent. Hans v. Louisiana, 134 U.S. 1, 15-18 (1890). Thus, the Court's subject matter jurisdiction over the United States exists only to the extent that the United States has waived its sovereign immunity. See Hercules, Inc. v. United States, 516 U.S. 417, 422-423 (1996). When a question of waiver is at issue, any waiver of sovereign immunity must be strictly construed in favor of the United States since the "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." Lehman v. Nakshian, 453 U.S. 156, 161 (1981).

The Plaintiffs argue that 42 U.S.C. § 2297h-8(a)(7)(c) provides such an express waiver of sovereign immunity:

> Any suit alleging a violation of any provision of this subsection, to the extent it does not allege a violation of the *National Labor Relations Act*, may be brought in any district court of the United States having jurisdiction over the parties, without regard to the amount in controversy or the citizenship of the parties.

However, simply because a district court may have jurisdiction to hear a certain cause of action does not mean that the United States has waived its immunity if that action were to be brought against it. United States v. Nordic Village, Inc., 503 U.S. 30, 37-38 (1992). In other words, the mere fact that Congress has granted jurisdiction to hear a claim does not suffice to show that Congress has abrogated all defenses to that claim. Id. at 38.

The Plaintiffs' argument is further unconvincing in light of the express text of the Privatization Act. The Privatization Act expressly withdraws the government's consent to be sued "for any legal, equitable, or other relief with respect to any claim arising from any action taken by any agent or officer of the United States in connection with the privatization" of USEC, Inc. 42 U.S.C. § 2297h-7(a)(4). The Privatization Act also states that the USEC is not an "agency, instrumentality, or establishment of the United States, a Government corporation, or a Government-controlled corporation." 42 U.S.C. § 2297h-3(b)(1). Finally, the Privatization Act assigns any liability arising out of the operation of USEC, after its privatization date, solely to that corporation, not to the United States. 42 U.S.C. § 2297h-7(c).

The Plaintiffs also assert that the United States was "in charge" of the establishment of the new pension plan, that it is likely that the United States would be an indispensable party to this lawsuit under F.R.C.P. 19(b), and that therefore the United States has waived its immunity from suit. It does not necessarily follow that if the United States is an indispensable party it has waived its immunity. If the sovereign has retained its immunity

but is an indispensable party to the lawsuit, the only course of action available to the court would be to dismiss the suit in its entirety, not to mandate the joinder of the sovereign as a defendant. See California v. Arizona, 440 U.S. 59, 62 (1979); Spirit Lake Tribe v. North Dakota, 262 F.3d 732, 746-47 (8th Cir.2001).

For these reasons, the Court holds that the DOE has not waived its sovereign immunity and its motion to dismiss for failure to state a claim is thus granted.

### B. Plaintiffs' Claims against LMES and USEC

Having found the DOE to be immune from suit, the Court now turns its attention to Plaintiffs' claims against LMES and USEC.

### 1. Constitutional Claim

The Plaintiffs bring an equal protection claim in Count I of the Complaint pursuant to 42 U.S.C. § 1983[3] as set forth in Count IV of the Complaint. Specifically, Plaintiffs contend that as a result of the Defendants' application and administration of the Privatization Act, they have been classified in a manner which has arbitrarily burdened them as a class and has denied them "equal protection" as guaranteed by the 14th Amendment. The issue is the applicability of the 14th Amendment to USEC and LMES. Plaintiffs argue that as USEC was formerly owned by the federal government and LMES contracted with the federal government, an equal protection claim against both is appropriate. In response, LMES contends that a private corporation is not liable for a "constitutional tort" for damages when

---

[3]42 U.S.C. § 1983 states in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State...subjects or causes to be subjected, any citizen...to the deprivation of any rights, privileges, or immunities secured by the Constitution...shall be liable..."

it contracts with the federal government. USEC argues that as it became a private corporation on July 28, 1998, it likewise cannot be held liable for a "constitutional tort."

Only a state actor can violate the 14th Amendment. Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982). Thus, any 14th Amendment claim brought against a private actor must necessarily fail. However, an action that violates the 14th Amendment guarantee of equal protection when committed by a state actor violates the due process guarantee of the 5th Amendment when committed by a federal actor. United States v. Elliott, 89 F.3d 1360, 1364 (8th Cir.1996). Thus, if the Plaintiffs can show that either USEC or LMES is a federal actor, they can state a claim under the Due Process Clause of the 5th Amendment. The Court will thus treat the Plaitniffs' equal protection claim under the 14th Amendment as a due process claim under the 5th Amendment.

In Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 66 (2001), the Supreme Court refused to recognize a "constitutional tort" for damages, under a Bivens theory, against a corporation which contracts with the federal government. See generally Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971); see also Ruff v. Runyon, 258 F.3d 498, 502 (6th Cir.2001) (stating that § 1983 and Bivens actions are identical except for the requirement of a state actor under § 1983 and federal actor under Bivens).[4]

In this case, LMES and USEC are both private corporations.[5] The record illustrates

---

[4] The Plaintiffs brought their equal protection claim under § 1983. The Court found that the Plaitniffs' equal protection claim was actually a due process claim under the 5th Amendment, which is applicable only to the federal government. Thus, Plaintiffs cannot bring an equal protection claim under § 1983. Rather, their claim is more appropriately stated as a due process claim under Bivens.

[5] Based on this finding, all of Plaintiffs' claims in Count IV of the Complaint fail.

-11-

that USEC became a private corporation on July 28, 1998. This date was well before any of the incidents which provided the basis for the Plaintiffs' claims, and so Plaintiffs' constitutional claim against USEC fails. Likewise, LMES is not a "federal actor" based on Malesko, and Plaintiffs' constitutional claim against it fails as well.[6]

### 2. Privatization Act

Based on the language of the Privatization Act and its legislative history, Plaintiffs argue that they should not have been transferred from the original plan to the new plan. Alternatively, the Plaintiffs argue that, even if they should have been transferred, their transfer should have been accompanied by a transfer of additional assets reflecting a "surplus" in the original plan. Because neither of the aforementioned events occurred, Plaintiffs contend that LMES and USEC violated the terms of the Privatization Act. Plaintiffs aver that LMES violated the Privatization Act in that they failed to transfer "all plan assets relating to accrued pension benefits." Plaintiffs aver that USEC violated the Privatization Act by not taking affirmative steps to facilitate what Plaintiffs view as a required transfer by law.

LMES extensively addresses the language and the legislative history of the Privatization Act in its brief and argues that the text, when interpreted in light of ERISA, does not support the Plaintiffs' argument.[7] USEC addresses this issue in its brief but also argues

---

[6]The remaining issue presented by Count I is the assertion that the transfer of the retiree benefits was "unauthorized." This issue calls for an examination of the merits of the Plaintiffs' claims under the Privatization Act and ERISA. The Court need not discuss this issue based on its holdings in Sections B2 and B3.

[7]LMES further filed a motion in which it argued that the Plaintiffs made erroneous assertions regarding the legislative history of the Privatization Act. As the Court has decided this case on other grounds, it need not assess the accuracy of LMES' contentions.

-12-

that the Plaintiffs' Privatization Act claim must fail for two additional reasons: (1) the Plaintiffs' claim is time-barred under the federal "catch-all" statute of limitations and (2) the Plaintiffs lack Article III standing. The Court finds that the statute of limitations argument is controlling, and thus it need not address any other issue presented by the parties.[8]

The employee protection provisions of the Privatization Act, which give plaintiffs the right to bring an enforcement action, do not include a specific statute of limitations for bringing such actions. 42 U.S.C. § 2297h-8. The Privatization Act was enacted in 1996. In cases where a federal piece of legislation was enacted on or after December 1, 1990, the applicable statute of limitations is 28 U.S.C. § 1658, the federal "catch-all" statute of limitations, which provides, "except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues."

The Plaintiffs in this action filed their Complaint on June 29, 2004. Neither the Plaintiffs nor any of the Defendants dispute the applicability of 28 U.S.C. § 1658 to the instant case, and the Court likewise concludes that it is applicable. Thus, the relevant question becomes at what point did the Plaintiffs' claim under the Privatization Act accrue for purposes of the statute of limitations. If the Plaintiffs' Privatization Act claim accrued before June 29, 2000, then the claim is barred by the federal "catch-all" statute of limitations. If the

---

[8]Although LMES makes no mention of a defense based on the statute of limitations in its motion, the Plaintiffs' claims against LMES under the Privatization Act and ERISA are, in the Court's view, time-barred by the statutes of limitations as set forth in 28 U.S.C. § 1658 and 29 U.S.C. 1113(2) respectively. Plaintiffs had an opportunity to respond to USEC's statute of limitations argument as to their claims under the Privatization Act and ERISA. Thus, Plaintiffs are not prejudiced by the Court's application of the statute of limitations defense to the claims Plaintiffs asserted against LMES.

Plaintiffs' claim accrued after June 29, 2000, then the Plaintiffs' claim is not time barred.

Both parties cite the Pension Plan Asset Transfer Agreement, dated May 24, 2000, as relevant in determining when Plaintiffs' Privatization Act claim accrued. By the terms of the agreement, July 1, 1999 was designated as the "initial transfer date," and June 30, 2000 was designated as the "final transfer date." The Plaintiffs argue that the "final transfer date" marks the time at which its Privatization Act claim began to accrue. USEC contends that the Plaintiffs' claim accrued no later than May 24, 2000, the date of the Pension Plan Asset Transfer Agreement.

A "statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." Sevier v. Turner, 742 F.2d 262, 273. "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence. Id. In deciding when a statute of limitations should begin to run, courts inquire as "to what event should have alerted the typical lay person to protect his or her rights." Hughes v. Vanderbilt Univ., 215 F.3d 543, 547 (6th Cir.2000).

In the instant case, USEC cites four dates at which point the Plaintiffs should have known to protect their rights:

> 1. On April 26, 1996, Congress enacted the USEC Privatization Act. The Privatization Act did not provide for a transfer of surplus assets from the original plan to the new plan.
>
> 2. In May 1999, all retirees in the class Plaintiffs purport to represent were sent written notices that they–and the assets attributable to their accrued benefit–would be transferred from the original plan to the new plan. The notice further stated that their pensions would be paid from the assets of the new plan. The notice did not state that surplus assets would be transferred

> from the original plan to the new plan.
>
> 3. On December 21, 1999, the original plan was amended to clearly state that the original plan would transfer assets to the new plan in an amount equal to the accrued benefit of each transferred participant.
>
> 4. On May 24, 2000, USEC and LMES entered into a Pension Plan Asset Transfer Agreement, thus formalizing an arrangement that began with an initial asset transfer of approximately $400 million on or about July 1, 1999. This Agreement provided that the asset transfer would comply with section 414(I) of the Internal Revenue Code. The Agreement made no provision whatsoever for any transfer of surplus.

It should have been clear to the Plaintiffs that they may have had a possible cause of action long before but in any event no later than May 24, 2000, the date of the Pension Plan Transfer Agreement. As May 24, 2000 reflects that latest possible date at which Plaintiffs should have known that they may have had a cause of action, Plaintiffs' surplus transfer claim could not have accrued after that date.[9]

Plaintiffs' contention that their claim accrued on June 30, 2000 is not consistent with Sixth Circuit case law which focuses on the date of an event which should have alerted the typical lay person to protect his or her rights. See e.g., Roberson v. State of Tennessee, 2005 WL 350946, No. 03-6181 (6th Cir. Feb. 15, 2005). The Plaintiffs' decision to wait until the date of the final installment prior to filing suit is identical to the decision of the medical student in Roberson, who decided to wait out the appeals process rather than filing a civil rights suit at the point at which a reasonable person would have acted to protect his or her

---

[9]On May 18, 1999, Plaintiffs were told that they would be transferred from the original plan to the new plan. Based on that communication alone, Plaintiffs wrongful transfer claim must fail as barred by the federal "catch-all" statute of limitations. Thus, the focus of the Court's inquiry is on the surplus transfer claim.

rights. Id. at *2, *4.

### 3. ERISA

In Count III of the Complaint, the Plaintiffs' set forth a claim under ERISA. That claim is based upon a breach of fiduciary duty. Specifically, the Plaintiffs aver that the Defendants have failed to comply with ERISA transfer requirements, have unlawfully and without authorization transferred the Plaintiffs as "plan participants" from the original plan to the new plan, and have withheld the pro rata share of the surplus fund related to the Plaintiffs' pensions from the new plan. They also argue that USEC is in continuing breach of its fiduciary duty. Defendants LMES and USEC set forth several defenses in response to these claims, but the Court again need only discuss the statute of limitations defense set forth by USEC, as it is controlling.

Under ERISA, when a fiduciary breaches an obligation or duty, the victim of the breach normally has six years in which to file suit. 29 U.S.C. § 1113(1). However, this period may be shortened to three years where the victim had "actual knowledge of the breach or violation." 29 U.S.C. § 1113(2).[10] The appellate courts are conflicted on the proper interpretation of the phrase "actual knowledge." See Wright v. Heyne, 349 F.3d 321 (6th Cir.2003). The Sixth Circuit, however, recently settled on the following interpretation of the

---

[10]Section 413 of ERISA, 29 U.S.C. § 1113 states as follows: No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of–
(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

phrase "actual knowledge:"

> [T]he relevant knowledge required to trigger the statute of limitations under 29 U.S.C. § 1113(2) is knowledge of the facts or transaction that constituted the alleged violation; it is not necessary that the plaintiff also have actual knowledge that the facts establish a cognizable legal claim under ERISA in order to trigger the running of the statute. This view is not only in accord with our previous ERISA "actual knowledge" decisions but it also furthers the policies underlying statutes of limitations. Among the basic policies served by statutes of limitations is preventing plaintiffs from sleeping on their rights and prohibiting the prosecution of stale claims.

Id. at 330.

The Sixth Circuit also rejected an argument that the three-year statute of limitations is tolled until the plaintiff consults with an attorney and learns from the attorney that he has a claim for breach of ERISA fiduciary duties. Id. at 331.

Furthermore, courts have rejected the continuing violation theory in an ERISA benefit case arising under § 1113(a)(2) since application of the continuing violation theory would read the "actual knowledge" requirement out of the statute. See Phillips v. Alaska Hotel and Restaurant Employees Pension Fund, 944 F.2d 509, 520 (9th Cir. 1991), cert. denied 504 U.S. 911 (1992). "Once a plaintiff knew of one breach, an awareness of later breaches would impart nothing materially new." Id. at 520.

The three-year statute of limitations as set forth in 29 U.S.C. § 1113(2) is applicable in the instant case as the Plaintiffs do not allege fraud or concealment. The Court's reasoning as to the timing of the accrual of Plaintiffs' claim under the Privatization Act is likewise applicable here. Plaintiffs' claim under ERISA could have accrued no later than May 24, 2000. Thus, Plaintiffs' ERISA claim is barred by the statute of limitations.

## IV. CONCLUSION

For the reasons set fort above, the motions of Defendants LMES [DN 14], DOE [DN 15], and USEC  [DN 36] are all **GRANTED.**

cc: counsel of record
04-138Edwards